```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
WAYNE LEDERER,

                        Plaintiff,         MEMORANDUM & ORDER
                                            10-CV-0271(JS)(GRB)
        -against-

NEWMATIC SOUND SYSTEMS, INC. and
NINE EIGHTEEN MEDICAL, INC.,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Edmond R. Bannon, Esq.
                    Fish & Richardson, P.C.
                    601 Lexington Avenue, 52nd Floor
                    New York, NY 10022

                    Mark L. Manewitz, Esq.
                    Manewitz Law
                    360 East 72nd Street, Suite A-1401
                    New York, NY 10021

For Defendants:     Robert B. Golden, Esq.
                    Cathy E. Shore-Sirotin, Esq.
                    Lackenback, Siegel, Marzullo, Aronson &
                        Greenspan, P.C.
                    One Chase Road
                    Scarsdale, NY 10583

                    Craig M. Stainbrook, Esq.
                    Stainbrook & Stainbrook, LLP
                    412 Aviation Blvd, Suite H
                    Santa Rosa, CA 95403
```

SEYBERT, District Judge:

Currently pending before the Court is defendants Newmatic Sound Systems, Inc. ("Newmatic") and Nine Eighteen Medical, Inc.'s ("Nine Eighteen" and together with Newmatic, "Defendants") motion to dismiss plaintiff Wayne Lederer's

("Plaintiff") Amended Complaint. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiff originally commenced this action on January 22, 2010 solely against Newmatic alleging, inter alia, infringement of U.S. Patent No. 7,609,844 (the "Original Patent"). Thereafter, Newmatic filed a Request for Reexamination of the Original Patent with the U.S. Patent and Trademark Office ("PTO") and Plaintiff filed a Request for Reissue of the Patent. (See Defs.' Br. to Dismiss, Docket Entry 48, at 2.) Newmatic then moved to stay the action pending resolution of these proceedings before the PTO, which the Court granted on January 4, 2011. (See Docket Entries 22-23, 34.)

The PTO granted Plaintiff's Request to Reissue, and reissued the Patent as RE 43,595 (the "'595 Patent"). (Defs.' Br. to Dismiss at 2.) As a result, the Court lifted the stay and Plaintiff filed an Amended Complaint.

The Amended Complaint alleges that the '595 Patent entitled "Noise Attenuating Headset" was issued to Plaintiff on August 21, 2012. (Am. Compl. ¶ 7.) As will be discussed more fully below, that Patent relates to a magnetically inert headset for use in a magnetic resonance imaging ("MRI"). (Am. Compl. Ex. A.)

2

As the parties' briefs and accompanying documents explain, Plaintiff and Newmatic were competitors in the MRI accessories field. (Defs.' Br. to Dismiss at 3.) At some point in time, Newmatic ceased operations and sold its right to make and sell particular products, including the allegedly infringing products, to non-party Marketlab, Inc. ("Marketlab"). (Defs.' Br. to Dismiss at 3.) Plaintiff and Marketlab have since resolved any potential disputes. (Pl.'s Opp. Br., Docket Entry 51, at 1.)

However, after the sale to Marketlab, one of Newmatic's prior customers contacted Newmatic's President Elias Husary and expressed his dissatisfaction with Marketlab's services. (Defs.' Br. to Dismiss at 4.) According to Defendants, Mr. Husary then formed Nine Eighteen on March 1, 2011 "for the purpose of servicing the dissatisfied customer." (Defs.' Br. to Dismiss at 4.) Nine Eighteen executed a "Supply and Commission Agreement" with Marketlab, allowing Nine Eighteen to sell a limited selection of goods in exchange for a commission to Marketlab. (Defs.' Br. to Dismiss at 4.) "Among the goods sold by Nine Eighteen are the goods Plaintiff originally accused of infringing the Patent." (Defs.' Br. to Dismiss at 4.) Accordingly, the Amended Complaint alleges patent infringement against Nine Eighteen. (Am. Compl. ¶¶ 14-17.)

DISCUSSION

Defendants move to dismiss the Amended Complaint on three grounds: (1) the Amended Complaint does not assert any allegations against Newmatic, and therefore Newmatic should be dismissed from the action; (2) the Court lacks personal jurisdiction over Nine Eighteen; and (3) the Amended Complaint fails to state a claim for patent infringement against Nine Eighteen.  The Court will address each of these arguments in turn.

I. Dismissal of Newmatic

Defendants move to dismiss Newmatic from the action because the Amended Complaint does not assert any allegations against Newmatic.  (Defs.' Br. to Dismiss at 5.)  Plaintiff concedes this point and admits that "[t]here are no claims pending against Newmatic . . . ."  (Pl.'s Opp. Br. at 1 n.1.)

Although the Amended Complaint names both Newmatic and Nine Eighteen in the caption, it is apparent that Newmatic is not currently a defendant in this action. Accordingly, there is no dispute that it should be terminated as a defendant. However, there is a dispute as to whether Newmatic should be dismissed with or without prejudice.  Pursuant to Federal Rule of Civil Procedure 41(a)(2), where there is no notice or stipulation of dismissal, the court may dismiss a party pursuant to a plaintiff's request "on terms that the court considers

4

proper."  Although Defendants assert that Newmatic should be dismissed with prejudice in the interest of finality, the Court finds that dismissal without prejudice is proper here.

Accordingly, the Clerk of the Court is directed to TERMINATE Newmatic as a defendant and Plaintiff's claims against Newmatic are DISMISSED WITHOUT PREJUDICE.

II. Personal Jurisdiction

Defendants further assert that this Court has no personal jurisdiction over Nine Eighteen.  As set forth in the Amended Complaint, Nine Eighteen is a California corporation with a place of business in Petaluma, California.  (Am. Compl. ¶ 3.)  The Court will first address the applicable legal standard before turning to Defendants' arguments more specifically.

A. Legal Standard Under Rule 12(b)(2)

"A plaintiff bears the burden of demonstrating personal jurisdiction over the person or entity against whom it seeks to bring suit."  Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).  The Court has "considerable procedural leeway" in resolving a pretrial motion to dismiss for lack of jurisdiction:  it may decide the motion on the basis of the parties' affidavits by themselves, "permit discovery in aid of the motion, or . . . conduct an evidentiary hearing on the merits of the motion."  Marine

5

Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted). A plaintiff's precise burden depends on how the Court elects to address the jurisdiction issue. Id. Short of a "full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Id. While a plaintiff will still have to establish jurisdiction by a preponderance of the evidence at trial or a pretrial evidentiary hearing, "until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." Id.

"A plaintiff can make this showing through [its] own affidavits and supporting materials, containing [a] [good faith] averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (alterations in original) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)) (internal quotation marks omitted). When the issue is addressed in affidavits, all allegations are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. Id.; DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). Thus, the Court accepts Plaintiff's evidence as true. See In re Ski Train Fire

6

in Kaprun, Austria on Nov. 11, 2000, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004) ("[A] court may consider materials outside the pleadings, but must credit the plaintiff's averments of jurisdictional facts as true.").[1]

B. Determining Personal Jurisdiction

Whether or not a defendant is subject to personal jurisdiction involves a two-part analysis by a District Court sitting in diversity. First, the Court asks whether it has jurisdiction over the defendant under the forum state's laws--i.e., under N.Y. C.P.L.R. 301 or 302. See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). Second, if there is potential jurisdiction, the Court must then determine whether such exercise would be consistent with the due process guarantees of the United States Constitution. See id.

---

[1] As the foregoing legal standard makes clear, Defendants' assertion that submission of declarations and affidavits on the issue of personal jurisdiction may require that this Court convert the motion to dismiss to one for summary judgment is meritless. See C.B.C. Woods Prods., Inc. v. LMD Integrated Logistics Servs., Inc., 455 F. Supp. 2d 218, 221 (E.D.N.Y. 2006) ("A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is inherently a matter requiring the resolution of factual issues outside of the pleadings." (internal quotation marks and citation omitted)). Moreover, based upon this relatively lenient standard--which allows for a prima facie showing through affidavits or materials outside of the pleadings--Defendants' motion to dismiss because Plaintiff's jurisdictional pleadings are insufficient is DENIED.

### 1. Jurisdiction Pursuant to N.Y. C.P.L.R. 301

Defendants maintain that there is no jurisdiction over Nine Eighteen pursuant to N.Y. C.P.L.R. 301. Plaintiff asserts that the Court has personal jurisdiction over Nine Eighteen "by virtue of, among other things, conducting a substantial, systematic and continuous business of offering to sell and selling goods and/or services in this judicial district and elsewhere throughout the United States." (Am. Compl. ¶ 4.) The Court agrees with Nine Eighteen that there is no personal jurisdiction pursuant to N.Y. C.P.L.R. 301.

"This section authorizes the general exercise of personal jurisdiction over a non-resident defendant if it is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." C.B.C. Woods Prods., Inc., 455 F. Supp. 2d at 223 (internal quotation marks and citation omitted). In making this determination, courts consider: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." Id. (internal quotation marks and citation omitted). "The 'doing business' standard is necessarily a stringent one, because a finding of general jurisdiction subjects a foreign corporation to suit 'on causes of action wholly unrelated to

8

acts done in New York.'" Albany Int'l Corp. v. Yamauchi Corp., --- F. Supp. 2d ----, 2013 WL 5718538, at *4 (N.D.N.Y. Oct. 22, 2013) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990)).

It is undisputed that Nine Eighteen does not maintain an office in New York, does not have any employees here, and that there are no known bank accounts or property in the state. Plaintiff nonetheless maintains that "[b]oth Nine Eighteen and its President, Mr. Husary, readily admit that they are doing business in New York by servicing customers and making direct sales to companies in New York." (Pl.'s Opp. Br. at 5.) Plaintiff is apparently referring, at least in part, to Mr. Husary's declaration that, since its inception, Nine Eighteen has made three direct sales to New York entities. (See Husary Decl., Docket Entry 50, ¶¶ 17-18.) However, "it is well-established that solicitation of business alone will not justify a finding of corporate presence in New York." C.B.C. Woods Prods., Inc., 455 F. Supp. 2d at 223. "Under New York law, a foreign corporation may be subject to general jurisdiction under the 'solicitation-plus' doctrine if its sales to New York customers rise to the level of 'substantial solicitation.'" Albany Int'l Corp., 2013 WL 5718538, at *3 (quoting Copterline Oy v. Sikorsky Aircraft Corp., 649 F. Supp. 2d 5, 16 (E.D.N.Y. 2007)).

9

Here, though, there is nothing to suggest a level of "substantial solicitation." Mr. Husary declares that, since its inception, Nine Eighteen has had total sales of over $1 million, only $1,387 of which were direct sales to New York entities. (Husary Decl. ¶¶ 17-18.) Mr. Husary points to only three sales that were made to entities located in New York: (1) a camera for $575; (2) an MRI camera for $650; and (3) an earmuff headset for $162. (Husary Decl. ¶ 15.) Such sales constitute only 0.1% of Nine Eighteen's total sales. "[A] finding that a foreign corporation derives less than five percent of its revenue from New York sales does not rise to the level of 'substantial solicitation.'" Albany Int'l Corp., 2013 WL 5718538, at *3; see also Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp., No. 05-CV-2744, 2007 WL 3378256, at *3 n.4 (S.D.N.Y. Nov. 9, 2007) ("When less than 5% of a company's revenue attributes to its business in the forum state, general jurisdiction is normally denied.").

Plaintiff further maintains that "it is clear that Nine Eighteen is selling products, including the infringing headsets, to GE Healthcare Systems ('GE') for delivery and use in New York Hospitals." (Pl.'s Opp. Br. at 6.) Plaintiff goes on to explain that "although neither Mr. Husary nor Nine Eighteen identified who the 'dissatisfied' customer was that Nine Eighteen was formed to service, it is clear that customer

10

is GE." (Pl.'s Opp. Br. at 6.)  In support, Plaintiff provides two documents confirming that GE sells Nine Eighteen's products and that the Hospital for Special Surgery in New York City was using the infringing products with its MRI system. (See Lederer Decl., Docket Entry 52, Exs. B & C.)  Thus, given Nine Eighteen's relationship with GE--as well as its agreement with Marketlab to sell the products--Plaintiff seems to assert that GE and Marketlab are acting with Nine Eighteen's authority and for its benefit, thus conferring personal jurisdiction under Section 301.[2] (See Pl.'s Opp. Br. at 4.)

However, Plaintiff has not proffered any allegations from which the Court can infer such authority or benefit. Certainly it is true that, as Plaintiff suggests,

> [a] foreign corporation may be subject to jurisdiction in New York under § 301 when a separate corporation, acting with its authority and for its substantial benefit, carries out activities in New York that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."

---

[2] Plaintiff also makes reference to Marketlab and GE's websites. (Pl.'s Opp. Br. at 6-7.)  This argument is without merit. See Tri-Coastal Design Grp., Inc. v. Merestone Merch., Inc., No. 05-CV-10633, 2006 WL 1167864, at *7 (S.D.N.Y. May 3, 2006) (rejecting contention that there was jurisdiction over defendant under Section 301 due to sale of defendant's products on third-party websites).

11

United Rope Distribs., Inc. v. Kimberly Line, 770 F. Supp. 128, 132 (S.D.N.Y. 1991) (quoting Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 121 (2d Cir. 1967)). Nothing about Plaintiff's contentions, though, suggest that GE or Marketlab did anything with Nine Eighteen's authority or for its benefit. Moreover, if GE or Marketlab did not sell to, or solicit, New York customers, there is no reason to think that Nine Eighteen would step in and perform such a function.

Accordingly, the Court does not have personal jurisdiction over Nine Eighteen under N.Y. C.P.L.R. 301.

2. Jurisdiction Pursuant to N.Y. C.P.L.R. 302

Defendants further assert that the Court also does not have personal jurisdiction over Nine Eighteen pursuant to N.Y. C.P.L.R. 302. Plaintiff argues that Nine Eighteen is subject to personal jurisdiction under subsections (a)(1), (2), and (3) of C.P.L.R. 302. The Court finds that some jurisdictional discovery is warranted.

Initially, though, the Court rejects Plaintiff's contention that Section 302(a)(2) may confer personal jurisdiction. That provision allows for personal jurisdiction over a defendant who "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." N.Y. C.P.L.R. 302(a)(2). It is, however, predicated on physical presence in the state. See

12

Bensusan Rest. Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997); Japan Press Serv., Inc. v. Japan Press Serv., Inc., No. 11-CV-5875, 2013 WL 80181, *9 (E.D.N.Y. Jan. 2, 2013). As Plaintiff has not alleged physical presence, there can be no jurisdiction under Section 302(a)(2).

Plaintiff further argues that this Court has personal jurisdiction over Nine Eighteen pursuant to Section 302(a)(1). Section 302(a)(1) provides for the exercise of long-arm jurisdiction over an out-of-state-defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." See also Grand River, 425 F.3d at 165-66. A party need not be physically present in the state for the court to obtain personal jurisdiction under this provision. See Chloé v. Queen Bee of Beverly Hills, L.L.C., 616 F.3d 158, 169 (2d Cir. 2010). Rather, New York courts define transacting business as "purposeful activity--'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246-47 (2d Cir. 2007) (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)).[3] "Moreover, where there is

---

[3] Courts have noted that this standard tends "to conflate the long-arm statutory and constitutional analyses by focusing on

13

a showing that business was transacted [in New York], there must be a 'substantial nexus' between the business and the cause of action." Grand River, 425 F.3d at 166 (citation omitted).

Plaintiff's arguments regarding 302(a)(1) primarily reiterate his arguments pertaining to Section 301. As to Plaintiff's argument that Nine Eighteen is making direct sales to companies in New York, "Section 302(a)(1) confers jurisdiction over a non-domiciliary corporation that 'transacts business within the state or contracts anywhere to provide goods and services in the state,' if there is a 'direct relationship between the causes of action and the in state conduct.'" C.B.C. Woods Prods., Inc., 455 F. Supp. 2d at 224 (quoting Fort Knox Music, Inc., v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000)). The only sales directed to New York customers as apparent from the current record were not sales of the allegedly infringing product, and therefore there is no direct relationship between the cause of action and the state conduct.

Plaintiff also argues that there is jurisdiction pursuant to 302(a)(1) because Nine Eighteen sells products to GE

---

the constitutional standard: whether the defendant's conduct constitutes 'purposeful[] avail[ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 247 (alterations in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

for delivery and use in New York hospitals. Specifically, Plaintiff asserts that

> [s]ince it is clear that Nine Eighteen is supplying customers in New York and that the accused product is being used in at least one New York hospital . . . it is likely that one or more of the agreements that Nine Eighteen has with Marketlab (and probably even GE) also provide for jurisdiction under the "contracts anywhere to supply goods or services in the state" clause of § 302(a)(1).

(Pl.'s Opp. Br. at 7.)

In applying the "contracts anywhere to supply goods or services in the state" provision of Section 302(a)(1), relevant factors for the Court's consideration include:

> (1) whether the purchase orders and other documents provide for shipment to New York; (2) whether the defendant collected New York sales tax in connection with the transaction; (3) whether the defendant solicited the contract in New York; (4) whether the defendant entered New York for purposes of performing the contract; and (5) any other factor showing that defendant voluntarily and purposefully availed itself of the privilege of transacting business in New York.

<u>Wickers Sportswear, Inc. v. Gentry Mills, Inc.</u>, 411 F. Supp. 2d 202, 210 (E.D.N.Y. 2006). While Nine Eighteen's "Supply and Commission Agreement" with Marketlab, a Michigan corporation, and its sales to GE, a company that apparently sells products worldwide, do not necessarily suggest contracts to supply goods or services in the state, the Court simply does not have enough

15

information to fully evaluate the relevant factors. Neither party has provided anything other than very vague descriptions of Nine Eighteen's agreements.

Moreover, these vague descriptions more specifically tee up potential issues regarding jurisdiction under Section 302(a)(3), which Plaintiff maintains also provides personal jurisdiction over Nine Eighteen. Section 302(a)(3) provides for personal jurisdiction over a defendant who

> commits a tortious act without the state causing injury to person or property within the state . . ., if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. 302(a)(3)(i)-(ii). For the reasons already articulated, the Court does not believe that Section 302(a)(3)(i) is applicable.

As to 302(a)(3)(ii), more discovery is warranted. Nine Eighteen asserts that Plaintiff has not sufficiently alleged a tort without the state causing injury in the state because Plaintiff's only assertion of injury in the state is his claim that he resides in New York and suffered economic injury

16

here. (Defs.' Br. to Dismiss at 12.)  Certainly, Nine Eighteen is correct that in "determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction [courts] must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999).  Moreover, the original event is distinct from both the initial tort and the final economic injury.  See id.; accord Avecmedia, Inc. v. Gottschalk, No. 03-CV-7831, 2004 WL 1586411, at *7 (S.D.N.Y. July 14, 2004).  "Under the law of the Federal Circuit, the situs of the injury 'is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee.'" Aqua Shield, Inc. v. Inter Pool Cover Team, No. 05-CV-4880, 2007 WL 4326793, at *4 (E.D.N.Y. Dec. 7, 2007) (quoting MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1377 (Fed. Cir. 2005)).

Nine Eighteen, however, mischaracterizes Plaintiff's allegations, affidavits, and supporting materials.  Here, Plaintiff asserts that not only was the economic injury to Plaintiff in New York, but also that "the infringing product is being sold and used in New York, at least at the Hospital for Special Surgery." (Pl.'s Opp. Br. at 8.)  "[A]llegation[s] that infringing sales were made in New York [are] legally sufficient

17

to satisfy the requirement of 'injury to person or property within the state.'" Tri-Coastal Design Grp., Inc., 2006 WL 1167864, at *4 (quoting Art Leather Mfg. Co., Inc. v. Albumx Corp., 888 F. Supp. 565, 568 (S.D.N.Y. 1995)); see also Stephan v. Babysport, LLC, 499 F. Supp. 2d 279, 288 (E.D.N.Y. 2007) ("Since the allegedly infringing product was offered for sale in New York, Plaintiff would, indeed, suffer injury in New York.").

Thus, Plaintiff has made at least a prima facie showing of a tortious act causing injury in the state.[4] Furthermore, Nine Eighteen does not seem to dispute that it derives substantial revenue from interstate or international commerce.

The more difficult issue is whether Nine Eighteen expected or should have expected its acts to have consequences in the state. This is an objective, rather than subjective, inquiry. See Stephan, 499 F. Supp. 2d at 289. "A 'mere likelihood or foreseeability that a defendant's product will find its way into New York' will support neither a finding of jurisdiction under New York law nor the Federal Constitution." Id. (quoting Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999)). "New York courts will assess whether the facts

---

[4] To the extent that Nine Eighteen intends to assert that the situs of the injury is the location in which it sold products to GE, neither party has provided any information regarding such arrangement. Accordingly, for the reasons stated infra, additional discovery is warranted in this regard.

demonstrate that defendant should have been aware that its product would enter the New York market." Byun v. Amuro, No. 10-CV-5417, 2011 WL 10895122, at *6 (S.D.N.Y. Sept. 6, 2011).

Here, Plaintiff asserts that Nine Eighteen, by servicing GE, could have expected consequences in New York and provides some proof of Nine Eighteen's allegedly infringing product being used in New York. (See generally Lederer Decl.) However, "[t]he record before the Court is unclear as to the nature and extent of the Defendants' commercial dealings that led to the presence of their accused products in New York." Westvaco Corp. v. Viva Magnetics, Inc., No. 00-CV-9399, 2002 WL 1933756, at *4 (S.D.N.Y. Aug. 20, 2002). Although the Court cannot characterize any potential agreements that Nine Eighteen may have with Marketlab and/or GE without additional information, it is worth noting that some "distributorship" agreements have been held sufficient to confer personal jurisdiction under Section 302(a)(3) while others have been considered insufficient. Compare Kernan, 175 F.3d at 242 with Stephan, 499 F. Supp. 2d at 290. Accordingly, the Court finds that limited discovery is warranted regarding Nine Eighteen's arrangements with Marketlab and GE.[5]

---

[5] In light of this Order regarding additional discovery, the Court will not address Defendants' additional argument regarding Plaintiff's asserted failure to adequately plead patent infringement against Nine Eighteen. However, the Court notes

19

CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.  It is GRANTED insofar as it seeks dismissal of Newmatic, and the Clerk of the Court is directed to TERMINATE Newmatic as a defendant and Plaintiff's claims against Newmatic are DISMISSED WITHOUT PREJUDICE.  It is DENIED insofar as it seeks dismissal due to Plaintiff's insufficient jurisdictional pleadings.  Moreover, Defendants' motion is TEMPORARILY DENIED insofar as Defendants assert that there is no personal jurisdiction over Nine Eighteen.  However, the Court sua sponte ORDERS additional limited discovery on the issue of personal jurisdiction.  Any issues regarding scheduling and completion of such discovery should be directed to Magistrate Judge Gary R. Brown.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:   December   20  , 2013
         Central Islip, New York

---

that Defendants argued, at least in part, that Plaintiff could not seek damages for products made, used, or sold before the issue date of the '595 Patent.  Plaintiff, however, concedes that is not seeking damages for events prior to such date.

20